461 F.2d 215
 HYNSON, WESTCOTT AND DUNNING, INCORPORATED, Petitioner,
v.
Elliot RICHARDSON, Secretary of Health, Education and
Welfare and Charles C. Edwards, Commissioner of
Food and Drugs, Respondents.
 No. 71-1717.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 7, 1972.
Decided May 24, 1972.
 
 Edward Brown Williams, Washington, D. C. (Jan Edward Williams and Harter, Calhoun & Williams, Washington, D. C., Robert H. Patterson, Jr., and McGuire, Woods & Battle, Richmond, Va., and John Kyle Worley on brief), for petitioner.
 Gregory B. Hovendon, Atty., Dept. of Justice (Richard W. McLaren, Asst. Atty. Gen., and Peter Barton Hutt, Asst. Gen. Counsel, Food, Drugs and Environmental Health Division, Eugene M. Pfeifer, Atty., U. S. Dept. of Health, Education, and Welfare, on brief), for respondents.
 Joel E. Hoffman, Washington, D. C. (Robert L. Wald, Selma M. Levine, and Wald, Harkrader & Ross, Washington, D. C., on brief), for amicus curiae.
 Before BUTZNER, RUSSELL and FIELD, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 The appellant, a drug manufacturer, seeks review of a final order withdrawing marketing approval (NDA) of the drug Lutrexin by the Commissioner of Food and Drugs, Department of Health, Education and Welfare.[1] The appellant alleges error in such order of withdrawal (1) for failure to sustain its claim of exemption from withdrawal on account of lack of "substantial evidence" of effectiveness of its drug and, if this claim of exemption is overruled, (2) for denial of a hearing, as required under the applicable statute, on its showing of effectiveness. We reverse.
 
 
 2
 The appellant was granted an approved NDA for Lutrexin in 1952. At that time, the Food, Drug and Cosmetic Act of 1938 conditioned such grant on general recognition of safety of the drug approved. In 1962 the Act was amended to authorize withdrawal of an approved NDA for any drug for which the Commissioner "after due notice and opportunity for hearing", found there was "a lack of substantial evidence" of effectiveness.[2] The term "substantial evidence" was defined in the Amendments as "consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling or proposed labeling thereof."[3] There was an exemption from these requirements for drugs, which, inter alia, were not covered on the day immediately before the enacting date of the Amendments (i. e., October 9, 1962) by an "effective NDA".[4]
 
 
 3
 In carrying out his new responsibilities under the Amendments, the Commissioner secured the services of the National Academy of Sciences-National Research Council (NAS-NRC) for reviewing the claims of effectiveness on behalf of any drugs NDA'd between 1938 and 1962.[5] To facilitate its assignment, NAS-NRC set up a Drug Efficacy Study Group and all drug manufacturers with approved NDAs obtained between 1938 and 1962 were directed by the Commissioner to submit to this Group evidence "pertinent to the evaluation of the effectiveness of the(ir) drugs."[6] The appellant submitted to the Group clinical data, investigations and studies in support of the effectiveness for its drug Lutrexin. After considering such data, NAS-NRC concluded that Lutrexin was "possibly effective" but indicated the supporting documentation was inadequate. The Commissioner advised the appellant of his concurrence with the conclusions of NAS-NRC and, as required by the statute, extended to it an opportunity for a hearing on the proposed withdrawal of the approved NDA for Lutrexin.[7] At such a hearing, the appellant was advised it might "produce evidence and arguments why approval * * * should not be withdrawn."[8] The appellant in due time requested such hearing. Under the Commissioner's regulations, a hearing was required within 90 days after such request, unless the parties agreed otherwise.[9] However, although no delay was agreed on, hearing within such period was not had. The delay on the part of the Commissioner in setting a hearing was due to litigation over the procedure to be followed by the Commission in implementing its efficacy review and in conducting hearings resulting therefrom.[10] It is unnecessary to review the difficulties encountered in developing valid regulations for such hearings. It is sufficient for the issues here that it was not until May 8, 1970, that the legal objections to the regulations were finally resolved. During this interregnum when the regulations of the Agency were under challenge and the Commissioner was delaying a hearing, the appellant, whose request for a hearing had been delayed for more than a year, sought in District Court a declaratory judgment to the effect that, under the exemption clause included in the 1962 Amendments, Lutrexin was not a "new drug" on and before October 10, 1962, and was thereby exempt from the requirement of evidence of effectiveness under the Amendments. Such action was dismissed on the ground that primary jurisdiction to resolve the issue of exemption under the Act rested with the Commissioner. No appeal was taken from this dismissal.
 
 
 4
 While this declaratory action was pending, the Commissioner issued his new regulations detailing the circumstances under which an applicant might secure a hearing on a proposal by the Commissioner for withdrawal of an effective NDA. By these regulations, the Commissioner was authorized to deny a hearing, "When it clearly appears from the data in the application and from the reasons and factual analysis in the request for the hearing that there is no genuine and substantial issue of fact which precludes the refusal to approve the application or the withdrawal of approval of the application, e. g., no adequate and well-controlled clinical investigations to support the claims of effectiveness have been identified, the Commissioner will enter an order on this data, making findings and conclusions on such data".[11] After the regulation had been legally promulgated, which was more than a year after the appellant had requested a hearing, the Commissioner directed the appellant's attention to these new regulations and suggested that it amend its request for a hearing to comply. Though it contended it had, by its earlier request, perfected its right to a hearing and was not obligated to amend its request, the appellant did, following the dismissal of its declaratory action, submit a considerable amount of clinical medical studies and investigations in support of the claim of effectiveness for its product by way of compliance with the new regulations. The Commissioner, however, dismissed the appellant's request for a hearing on the basis of such showing, finding (1) that its drug was a "new drug" requiring proof of effectiveness, and (2) that its showing of effectiveness was insufficient to demonstrate a "genuine and material issue of fact" under the test of "substantial evidence" as defined in the Amendments. On the basis of these findings it withdrew the approved NDA for Lutrexin. It is from this order that appeal has been taken.
 
 
 5
 * The appellant's claim to an exemption for its drug is easily disposed of. We have held in a related case that a drug covered by a pre-1962 approved NDA, which had not been withdrawn under the procedure set forth in Section 505(e), is not entitled to the exemption granted under Section 107(c) (4) of the Amendments.[12] The appellant's NDA was outstanding and had not been legally withdrawn on October 10, 1962. It cannot accordingly claim the benefit of the exemption statute for its drug. While the appellant was entitled to have this issue resolved by the District Court, it was not prejudiced by, and cannot complain of, the refusal by the District Court to exercise jurisdiction. Nor, for that matter, did the appellant appeal and is accordingly without standing in this proceeding to challenge that dismissal.
 
 II
 
 6
 The crucial issue in this case, however, is posed by the appellant's second contention and revolves about the requirement in the Act that, before the entry of a final order of withdrawal, the applicant be given an "opportunity for hearing". At such a hearing, the procedure adopted by the Commissioner allows the applicant to "produce evidence and arguments to show why approvals of (its drugs) * * * should not be withdrawn."12a Of course, the Commissioner might, as he did by his regulations issued in 1970, provide for the denial of a hearing where it clearly appeared from the applicant's own showing there was no "genuine and substantial issue of fact" on which the claim of the applicant might be sustained. Ciba-Geigy Corp. v. Richardson (2d Cir. 1971) 446 F.2d 466, 468. It may be assumed that such regulation, when issued will apply to all pending applications. United States v. Storer Broadcasting Co. (1956) 351 U.S. 192, 205, 76 S.Ct. 763, 100 L. Ed. 1081. But, in applying this regulation and in making his determination thereunder, the Commissioner's discretion is not absolute. Neither due process nor the Administrative Practice Act permits an arbitrary denial in any case where it can be fairly said there are "genuine and substantial issues of fact" in dispute.[13] Such a denial would, in addition, be violative of the Congressional purpose expressed in the provision for a hearing. And the courts must see that such Congressional purpose is not thwarted by administrative usurpation; or, as the Court said in Environmental Defense Fund, Inc. v. Ruckelshaus (1971), 142 U.S.App.D.C. 74, 439 F.2d 584, 596, the courts have "an obligation to ensure that the administrative standards conform to the legislative purpose * * *." Accordingly, only if it can be fairly said that the clinical tests and medical studies and investigations submitted by the applicant, if credited and accepted, will not support a finding that they provide "substantial evidence" of effectiveness was it proper for the Commissioner to deny the appellant a hearing before entering a final order of withdrawal. The judicial test is somewhat the converse of that to be applied in a review of a decision of the Commissioner entered after a hearing. In that instance, his decision is to be upheld, if sustained by any substantial evidence.[14] But in determining whether the Commissioner acted within the limits of his discretion on the procedural question of whether a hearing is to be allowed, the test is whether there is any "genuine and substantial" evidence that supports the position of the applicant. Manifestly, the applicant does not have to satisfy or convince the Commissioner by his evidence that his product is effective as a predicate for securing his right to a hearing. If that were his burden, a hearing would never be necessary or appropriate. If he, by his showing, convinced or satisfied the Commissioner, the proposed withdrawal would naturally be denied; on the other hand, if he failed to satisfy, then the Commissioner would deny a hearing and order withdrawal. In either event, a hearing would be useless and the Congressional promise of a hearing would be purely illusory. No such exacting standard of proof is required as a basis simply for the right to be heard; as has been observed, all that is required for securing a right to a hearing is that the showing be such that, if accepted, a finding of "substantial evidence" of effectiveness would be supportable. And "substantial" in this connection does not mean "preponderant evidence" or "conclusive evidence". Congress specifically discarded those terms for the milder term "substantial", which was understood to embrace the idea, not of a preponderance but rather of a responsible body of qualified opinion.[15]
 
 
 7
 Applying the foregoing principles, we are of opinion the showing of the appellant was such that, under a reasonable construction of the Commissioner's own regulations, as well as under familiar principles of due process, and the requirements of the Administrative Procedure Act, it was entitled to an impartial hearing before its NDA was withdrawn. It must be noted that no qualified expert has given an opinion that Lutrexin is ineffective for the uses intended. The NAS-NRC review concluded it was "possibly effective". Neither is there any contention that it is unsafe when used for the purposes intended. The real basis for the determination by the Commissioner that the appellant had failed to make a showing of any genuine issue of fact on the effectiveness of its drug was the conclusion that the various scientific articles and tests submitted by the appellant were not "adequate and well-controlled clinical investigations" within the statutory definition of "substantial evidence". In his decision, the Commissioner sought to point out the deficiencies in the investigations submitted by the appellant which justified this conclusion. In so doing, he did not impugn the competency or qualifications of the scientists and medical experts whose investigations were cited by the appellant in support of its claim. Their professional qualifications, as they appear in the record, are impressive. Their investigations and opinions, some of which have been published in recognized professional medical journals, are, however, dismissed by the Commissioner with the statement that, "No adequate and well-controlled clinical investigations published in the medical literature had been identified". In making that statement, he disregards the categorical opinion of his former Director of the Bureau of Medicine and Medical Director that the clinical tests and investigations submitted by the appellant represented "'well-controlled' clinical studies". He proceeds to fault two investigations published in an authoritative medical journal, submitted by the appellant, because, "There is no way to determine the percentage of patients on concurrent medication or whether the results of the study were thereby influenced", and "There is no summary or explanation of the statistical methods used in analysis of the data to show that results were not biased or due to chance". Another unpublished investigation is dismissed because, "Substantiating documentation to establish an historical control and percentage of patients with medical or surgical complications of pregnancy is not provided". Two published studies by a clinical professor of Obstetrics at the University of Illinois are criticized, in one instance, because "The report does not state the method of patient selection" and "Concomitant medication is not excluded" and, in the other, because "The method of selection of the patients does not show progressive dilation of the cervix, which is necessary to accurately diagnose premature labor." Assuming that all the objections by the Commissioner to these clinical studies, conducted as they were by competent medical authorities, may have some validity, they do not justify a final conclusion, made ex parte, without a hearing, that it "clearly appears" that there is no genuine issue of fact on the effectiveness of Lutrexin, which is the test under the Commissioner's own regulation for denial of a hearing; at most, they merely create a genuine question of fact to be resolved at a hearing upon proper evidence. Whether the studies were as controlled as they might have been and whether there was a failure in these studies as published to fill in all the details the Commissioner might think appropriate are matters that could be developed at a hearing, after the authors were examined and the reliability of the investigations further inquired into.
 
 
 8
 The order of the Commissioner, from which this appeal is taken, is set aside for failure to provide the petitioner with an "opportunity for a hearing" before the entry of said order.
 
 
 9
 Reversed.
 
 
 
 [1]
 Section 355(h), 21 U.S.C
 
 
 [2]
 Section 355(e), 21 U.S.C
 
 
 [3]
 Section 355(d), 21 U.S.C
 
 
 [4]
 "In the case of any drug which, on the day immediately preceding the enactment date, (A) was commercially used or sold in the United States, (B) was not a new drug as defined by section 201(p) of the basic Act as then in force * * *, and (C) was not covered by an effective application under section 505 of that Act * * *, the amendments to section 201 (p) * * * made by this Act shall not apply to such drug when intended solely for use under conditions prescribed, recommended, or suggested in labeling with respect to such drug on that day." Section 107(c) (4), appended to Section 321, 21 U.S.C., 1972 Supplement, p. 192
 
 
 [5]
 21 F.R. 13014, October 6, 1966
 
 
 [6]
 21 F.R. 13014
 
 
 [7]
 33 F.R. 7701
 
 
 [8]
 34 F.R. 5556
 
 
 [9]
 21 C.F.R. 130.14(b)
 
 
 [10]
 See Pharmaceutical Manufacturers Association v. Finch (D.C.Del.1970) 307 F.Supp. 858; Upjohn v. Finch (6th Cir. 1970) 422 F.2d 944; and Pfizer, Inc. v. Richardson (2d Cir. 1970) 434 F.2d 536
 
 
 [11]
 21 C.F.R. 130.14(b)
 
 
 [12]
 USV Pharmaceutical Corp. v. Richardson, (4th Cir. 1972) 461 F.2d 223
 12a Whether this is too narrow and improperly confines the scope of the hearing, so far as it is adjudicatory, see Davis, The Requirement of a Trial-Type Hearing, 70 Har.L.Rev. 193 (1956).
 
 
 [13]
 See Ciba-Geigy Corp. v. Richardson, supra, 446 F.2d at p. 468. The question is analogous to that presented by a demand for a hearing in connection with an N.L.R.B. election where the right to a hearing subject to the same general limitations as stated in the Commissioner's regulations, and it would seem the same test of the right to a hearing is applicable. For the rule in such N.L. R.B. case, see N.L.R.B. v. Bata Shoe Co. (4th Cir. 1967) 377 F.2d 821, 825-826; United States Rubber Co. v. N.L. R.B. (5th Cir. 1967) 373 F.2d 602, 606; N.L.R.B. v. Smith Industries, Inc. (5th Cir. 1968) 403 F.2d 889, 892-895
 
 
 [14]
 Section 355(h), 21 U.S.C
 
 
 [15]
 In the course of committee deliberation a distinction evolved-between two tests-the "preponderant evidence" test and the "substantial evidence" test as now specifically defined. Under the former a claim would not be accepted under the new drug section unless it represented the preponderant view of experts . . . the committee recognizes that in the difficult area of drug testing and evaluation there will frequently, if not usually, be a difference of responsible opinion. The committee feels the existence of such a difference should not result in disapproval of a claim of effectiveness if it is supported by substantial evidence defined in the manner set forth below [that is adequate and well controlled investigations by qualified experts upon the basis of which conclusions made be fairly and responsibly drawn.]
 [Application of the substantial evidence test means that] a claim could be rejected if it were found (a) that the investigations were not "adequate"; (b) that they were not "well-controlled"; (c) that they had been conducted by experts not qualified to evaluate the effectiveness of the drug for which its application is made; or (d) that the conclusions to be drawn by such experts could not fairly and responsibly be derived from their investigation.
 S.Rep.No.1744, 87th Cong., 2nd Sess., Part II, pp. 5-6, and see, 2 U.S.Code Congress. & Administrative News, 87th Cong., 2d Sess., p. 2892 (1962).