Filed 12/20/21

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WILLIAM N. BICHAI,<br><br>    Plaintiff and Appellant,<br><br>       v.<br><br>DAVITA, INC.,<br><br>    Defendant and Respondent. | F079815<br><br>(Super. Ct. No. BCV-18-100245)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Stephen D. Schuett, Judge.

William N. Bichai, in pro. per.; Fenton Law Group, Henry R. Fenton and Dennis E. Lee for Plaintiff and Appellant.

Law Offices of LeBeau Thelen, Patrick C. Carrick; Post & Schell, Robin Lock Nagele and Elizabeth M. Hein for Defendant and Respondent.

-ooOoo-

Plaintiff William N. Bichai, M.D., filed this lawsuit to challenge the denial of his application for appointment to the medical staff of a dialysis clinic. The superior court denied Bichai's request for a writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5. Bichai appealed.

---

\*     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III. and IV. of the Discussion.

This appeal addresses the procedural fairness of the hearing Bichai received after the clinic's peer review committee recommended his application be denied. The procedures for such a hearing are established by the medical staff bylaws and California's peer review statute. The hearing officer, applying burdens specified in the bylaws, concluded that (1) the clinic sustained its initial burden of presenting evidence to support the denial of staff privileges and (2) Bichai did not sustain his burden of proving that the denial "lacks any substantial factual basis, or is otherwise arbitrary or capricious."

We conclude the burden of proof contained in the medical staff bylaws is not consistent with the preponderance of the evidence standard required by Business and Professions Code section 809.3, subdivision (b)(2).[1] We further conclude the statute controls in the event of an inconsistency, the application of the bylaws' more demanding burden of proof constituted procedural error, the error deprived Bichai of a fair hearing and, therefore, was prejudicial. As a result, he is entitled to a writ of administrative mandamus vacating the hearing officer's decision.

We therefore reverse the judgment.

## FACTS

Defendant DaVita, Inc., is a Delaware corporation that owns and operates several dialysis facilities in California's Central Valley. The medical staff at the DaVita facilities are formed by the physicians practicing there. The medical staff is accountable to both the facility's governing body and to DaVita for the quality of medical services provided. The medical staff's activities are governed by the "Medical Staff Bylaws, Rules and Regulations" (Bylaws) that the DaVita Physician Council approved in 2015.

The Bylaws describe the nature of medical staff membership and clinical privileges, the procedures for appointment and reappointment to the medical staff,

---

[1] Subsequent unlabeled statutory references are to the Business and Professions Code.

categories of medical staff, and how the medical staff is governed. Article XIII of the Bylaws, titled "FAIR HEARING PLAN," addresses (1) the decisions that trigger a physician's right to a hearing, (2) the process for requesting and scheduling the hearing, (3) the procedural steps that must be completed before the hearing, and (4) procedures for the hearing itself. The right to a hearing is triggered by the denial of appointment or reappointment to the medical staff. The Bylaws' hearing procedures include the burden of proof requirement challenged by Bichai in this appeal.

Bichai is a licensed nephrologist and internist who moved to Bakersfield in 2008 and joined Kern Nephrology Medical Group, which was owned by Umamaheswara Varanasi, M.D. Bichai obtained privileges at facilities operated by DaVita and Fresenius, the two major dialysis competitors in the United States. In 2009, a dispute arose between Varanasi and Bichai, and Bichai left the practice group and became a solo practitioner.

In October 2009, a deputy general counsel for DaVita notified Bichai about a series of complaints that Bichai had inappropriately solicited patients of other physicians, including Varanasi, and engaged in disruptive behavior. Varanasi has a close relationship with DaVita and is the medical director at three of the four DaVita facilities where Bichai practiced.

In January 2010, Bichai's privileges at four of DaVita's facilities were suspended based on allegations of unprofessional and disruptive conduct during the preceding two and a half months. Bichai contends the allegations were false and were motivated by Varanasi's desire to eliminate Bichai as a competitor.

In November 2011, DaVita's Credentialing and Peer Review Committee (Peer Review Committee) voted to revoke Bichai's privileges. The next month, the governing bodies of the three DaVita facilities voted to revoke Bichai's privileges. Bichai retained counsel and attempted an informal resolution of the dispute.

In May 2013, DaVita and Bichai executed a confidential settlement agreement and mutual release, which stated it was effective as of April 22, 2013. The agreement

provided that Bichai would have a mentor at DaVita's facilities. Section 4 of the agreement stated in part:

> "In the event that the mentor reports to DaVita that Dr. Bichai is not adhering to community standards (including documentation standards) as to one or more patients, each patient's records will be submitted to an external reviewer secured through *MD Review* or as otherwise agreed to by the parties, and paid for jointly by Da Vita and Dr. Bichai. If the external reviewer concurs that Dr. Bichai's management of the patient is not adhering to community standards (including the documentation standards set forth in Section 3), Dr. Bichai will voluntarily resign his medical staff membership and clinical privileges at all Da Vita facilities, and agree to waive his hearing rights and will fully waive any and all litigation rights against DaVita, including all officers, directors, employees and agents. Dr. Bichai understands that such a resignation would be the subject of a 'Section 805' report to the [Medical] Board of [California]."[2]

On February 13, 2014, DaVita provided Bichai a report and findings of an MD Review consultant and advised Bichai that, based on the findings, he was to voluntarily resign his medical staff membership and clinical privileges at all DaVita facilities. DaVita also advised Bichai that the resignation was reportable to the Medical Board of California. Bichai asked that the decision be reconsidered. On February 20, 2014, DaVita sent Bichai a second notice of deemed resignation that stated the resignation was final and nonappealable.

In March 2014, DaVita filed an 805 report with the Medical Board of California. The report stated, Bichai "was deemed to resign his medical staff membership and clinical privileges on March 15, 2014, by agreement.… [Bichai] entered into a confidential settlement agreement with DaVita that resulted in his resignation while

---

[2]    Under section 805, licensed health care facilities in California must file a report with the appropriate state agency when a peer review body takes certain adverse action against a licentiate. (*Smith v. Selma Community Hospital* (2008) 164 Cal.App.4th 1478, 1483, fn. 2 (*Selma Hospital*).) Such a report is commonly called an " '805 report.' " (*Ibid.*; see § 805, subd. (b) [facility "shall file an 805 report with relevant agency within 15 days after" specified action by peer review body].)

4.

under investigation for a medical disciplinary cause or reason. There was no final finding or determination as to the clinical concerns, and the deemed resignation has rendered those issues moot."

Fifteen months later, in June 2015, Bichai attempted to regain privileges at DaVita by submitting a physician credentialing application. DaVita deferred consideration of this application because a formal accusation by the Medical Board of California was pending against Bichai. In September 2015, the Medical Board amended its accusation against Bichai. The accusation was related to complaints made by three hospitals in Bakersfield. In March 2016, the Medical Board withdrew the amended accusation.

In May 2016, after the withdrawal, Bichai submitted another physician credentialing application to DaVita. While the application was being evaluated, Bichai completed the University of California San Diego Physician Assessment Clinical Education (PACE) Program. (*Bichai v. Dignity Health* (2021) 61 Cal.App.5th 869, 872.) In January 2017, the PACE Program issued its findings that he was fit for duty without accommodations, although it recommended that he desist from self-treatment, undergo psychiatric consultation for his anxiety, reduce his patient volume, and read guidelines about boundaries in the use of electronic communications. Bichai provided a copy of the PACE Program report to the Peer Review Committee. He also submitted a copy of a quality pulse survey dated November 30, 2016.

On February 3, 2017, the Peer Review Committee voted to deny Bichai's application. The committee concluded that the documentation submitted by Bichai "does not provide sufficient assurance to the [committee] that the kinds of clinical, ethical, and professional conduct issues that were present during Dr. Bichai's prior appointment to the DaVita Medical Staff will not arise if he is again appointed to the Medical Staff."

Dr. John Robertson, in his capacity as chief medical officer, sent Bichai a notice of proposed adverse action and hearing rights dated February 10, 2017. The last paragraph of the notice informed Bichai that he had 30 days to request a hearing and, if no request

was made, his right to a hearing would be deemed waived and the denial of appointment would become final.

In March 2017, an attorney representing Bichai sent a request for hearing to DaVita by e-mail. In an attempt to resolve the matter before the hearing, Bichai presented additional documents to DaVita. In September 2017, the Peer Review Committee met, considered the documents, and voted unanimously not to alter its previous decision to deny Bichai's application.

In November 2017, DaVita notified Bichai that the formal hearing he requested would take place on December 12 and 13, 2017. Before the hearing, Bichai and DaVita entered into an arbitration agreement in which they chose an arbitrator and agreed the arbitrator would "decide their disputes arising out of DaVita Healthcare's denial of Dr. Bichai's application for appointment to the DaVita Medical Staff." They also agreed "the hearing shall be conducted according to … section 809, *et seq.* and Article IV of the Medical Staff Bylaws .… Arbitrator shall decide all questions of law and fact to the denial of Dr. Bichai's application for appointment and shall render a written decision as required by the Medical Staff Bylaws." In this opinion, the term "hearing officer" is used to refer to the attorney chosen by the parties as arbitrator.[3]

The hearing proceeded as scheduled. In January 2018, the hearing officer issued a 41-page written report concluding that the Peer Review Committee's decision to deny Bichai's application was supported by the record and "Bichai has not established that he is currently capable of meeting the qualifications set forth in Section 3.3(h), (i) and (j) of the Medical Staff Bylaws." The contents of the report describing the burden of proof imposed on Bichai are discussed in part II.B., *post*.

---

[3]     The parties' choice of a hearing officer is allowed by section 809.2, subdivision (a), which states that the trier of fact in a peer review hearing shall be "selected by a process mutually acceptable to the licentiate and the peer review body" or an unbiased individual who meets certain requirements.

## PROCEEDINGS

In February 2018, Bichai filed this lawsuit to challenge the hearing officer's decision. In July 2018, he filed a second amended complaint for unfair competition and petition for writ of mandamus.

In October 2018, the superior court sustained a demurrer to the unfair competition cause of action and entered an order dismissing that claim with prejudice. The litigation proceeded on Bichai's request for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5.

A copy of the administrative record was lodged with the superior court and the parties submitted briefs addressing whether a writ of administrative mandamus was appropriate. Bichai's briefing contended (1) substantial evidence did not support the hearing officer's decision, (2) the hearing officer should not have admitted hearsay evidence, (3) the evidence overwhelmingly established his fitness for membership on the medical staff, (4) the wrong burden of proof was applied and constituted reversible legal error, and (5) his 2014 deemed resignation was invalid under section 809.6 and, therefore, he was still a member of the medical staff. In March 2019, the superior court held a hearing and took the matter under submission.

In May 2019, the superior court issued its decision, concluding the hearing officer applied the correct standard of proof and substantial evidence supported the hearing officer's findings and decision. The court also concluded Bichai's deemed resignation in 2014 pursuant to the terms of a settlement agreement did not violate section 809.6.

In June 2019, the court filed a judgment in favor of DaVita that stated Bichai's petition for writ of administrative mandamus was denied. Bichai filed a timely appeal.

In a letter dated October 19, 2021, Bichai informed the court that he was requesting oral argument, that he would represent himself, and that the services of his attorneys had been terminated in July 2021. This court interpreted the letter as a substitution of attorney pursuant to California Rules of Court, rule 8.36(b) and recognized

7.

Bichai as a self-represented appellant. Thus, Bichai appeared at the December 2021 oral argument and presented arguments on his own behalf.

## DISCUSSION

I. BASIC LEGAL PRINCIPLES

A. Standard of Review

In a peer review proceeding addressing a physician's membership on a medical facility's staff, the final decision on membership and privileges is subject to judicial review by administrative mandamus. (See § 809.8 [judicial review]; Code Civ. Proc., § 1094.5 [administrative mandamus].) An appellate court reviews the final peer review decision, "not the reasoning or actions of the superior court." (*Selma Hospital, supra,* 164 Cal.App.4th at p. 1499.)

The first issue a reviewing court considers is whether the correct standards were used in conducting the hearing and reaching a final decision. (*Michalski v. Scripps Mercy Hospital* (2013) 221 Cal.App.4th 1033, 1042 (*Michalski*); *Hongsathavij v. Queen of Angels etc. Medical Center* (1998) 62 Cal.App.4th 1123 [whether correct standards were applied is threshold issue].) Here, the parties agree that appellate courts conduct a de novo review when determining whether the correct standards were applied.

A failure to apply the correct standards does not automatically result in the issuance of a writ vacating the peer review decision. (*El-Attar v. Hollywood Presbyterian Medical Center* (2013) 56 Cal.4th 976, 990–991 (*El-Attar*).) " 'Rather the question is whether the violation resulted in unfairness, in some way depriving the physician of adequate notice or an opportunity to be heard before impartial judges.' " (*Id.* at p. 991.) In other words, a deviation from the correct standards must be prejudicial. (*Ibid.*) "Whether a hearing officer's procedural rulings give rise to prejudicial error is a question of law reviewed independently on the administrative record." (*Natarajan v. Dignity Health* (2021) 11 Cal.5th 1095, 1111 (*Natarajan*).)

8.

Our Supreme Court has addressed the relief available when a physician demonstrates a peer review decision is tainted by a prejudicial error. Such an "error would entitle the licentiate to a new hearing. Judicial review cannot, of course, stand in for a fair proceeding in the first instance." (*Natarajan*, *supra*, 11 Cal.5th at p. 1112.) The rationale for a court not rendering a final decision on the merits of a physician's application for staff membership is that judges are untrained and courts are ill-equipped to make such decisions. (See *Goodstein v. Cedars-Sinai Medical Center* (1998) 66 Cal.App.4th 1257, 1266.)

If the correct standards were applied, the reviewing court's second inquiry is whether the administrative findings of fact are supported by substantial evidence. (Code Civ. Proc., § 1094.5, subds. (c), (d) [substantial evidence standard for administrative findings]; see *Michalski*, *supra*, 221 Cal.App.4th at p. 1041 [appellate and trial court review administrative record to determine whether findings of administrative body are supported by substantial evidence in light of the whole record].) The parties agree the substantial evidence standard applies to factual findings.

B.      Historical Overview of the Correct Procedural Standards

The common law doctrine of fair procedure was the initial source of the minimum protections for physicians subject to adverse action in a peer review proceeding. (*El-Attar*, *supra*, 56 Cal.4th at p. 986.) The doctrine was applied to the private association's membership decisions to assure the action taken was both substantively rational and procedurally fair. (*Ibid*.)

In 1986, Congress passed the Health Care Quality Improvement Act of 1986 (HCQIA; 42 U.S.C. §§ 11101–11152), which "envisioned minimal due process rights for those involved in the peer review process." (Merkel, *Physicians Policing Physicians: The Development of Medical Staff Peer Review Law at California Hospitals* (2004) 38 U.S.F. L.Rev. 301, 318.) HCQIA allows states to opt out if their own legislation includes certain basic procedural protections. (*Ibid*.)

In 1989, the Legislature chose to opt out of HCQIA and "design its own peer review system" because of perceived "deficiencies in the federal act and the possible adverse interpretations by the courts." (§ 809, subd. (a)(2).)  California's peer review statute was codified in sections 809 through 809.9, became effective January 1, 1990, and established minimum procedural standards that must be followed in certain peer review proceedings. (*Selma Hospital, supra,* 164 Cal.App.4th at p. 1483.)  The Legislature declared the new laws "provide a more careful articulation of the protections for both those undertaking peer review activity and those subject to review, and better integrate public and private systems of peer review." (§ 809, subd. (a)(9)(A).)  As a result of the new legislation, "peer review in California hospitals has changed dramatically" since the common law era. (Merkel, *Physicians Policing Physicians: The Development of Medical Staff Peer Review Law at California Hospitals, supra*, 38 U.S.F. L.Rev. at p. 318.)

Under California's peer review statute, the rules governing the peer review process have two basic sources—the statute itself and the medical staff bylaws. (*Selma Hospital, supra*, 164 Cal.App.4th at p. 1484.)  The statute requires the medical staff bylaws of an acute care hospital to include "written provisions implementing Section 809 to 809.8, inclusive." (§ 809, subd. (a)(8).)  Here, DaVita is not an acute care hospital and, therefore, it is not explicitly subject to this requirement.  DaVita contends that, pursuant to section 809.6, subdivision (a), its Bylaws may contain "any additional notice and hearing provisions … which are not inconsistent with Sections 809.1 to 809.4, inclusive."[4]  Based on section 809.6, we conclude sections 809.1 through 809.4 control when provisions in the Bylaws are not consistent with the statutory requirements.

---

[4]    Section 809.1 states that a licensed physician who is the subject of a final proposed action of a peer review body for which an 805 report is required shall be entitled to written notice and the notice shall inform the physician of his or her right to request a hearing on the final proposed action.  Section 809.2 sets forth a range of procedural requirements that apply to any requested hearing, including the inspection of documents, exchange of witness lists, continuances, and timing for commencement of the

II.   BYLAWS' ALLOCATION OF THE BURDEN OF PROOF

   A.   Bylaws' Provision Contradicts the Statute

Bichai contends the Bylaws' allocation of the burden of proof violates the requirements of section 809.3, subdivision (b).  In response, DaVita contends the Bylaws' burden of proof requirement is not inconsistent with the statute and, therefore, is permissible under section 809.6, subdivision (a).  As explained below, we conclude the Bylaws impose a more difficult burden of proof and, therefore, the Bylaws' burden of proof provision is not consistent with the statutory requirement.

Section 809.3, subdivision (b) addresses the burden of presenting evidence and the burden of proof during the hearing addressing a denial or revocation of staff privileges:

> "(1) The peer review body shall have the initial duty to present evidence which supports the charge or recommended action.

> "(2) Initial applicants shall bear the burden of persuading the trier of fact *by a preponderance of the evidence* of their qualifications by producing information which allows for adequate evaluation and resolution of reasonable doubts concerning their current qualifications for staff privileges, membership, or employment.  Initial applicants shall not be permitted to introduce information not produced upon request of the peer review body during the application process, unless the initial applicant establishes that the information could not have been produced previously in the exercise of reasonable diligence.

> "(3) Except as provided above for initial applicants, the peer review body shall bear the burden of persuading the trier of fact by a preponderance of the evidence that the action or recommendation is reasonable and warranted."  (Italics added.)

The burden of presenting evidence and the burden of proof also is addressed by Bylaws section 13.8.7, which states in full:  "The DaVita committee whose action or

hearing.  Section 809.3 sets forth the rights of the parties during a hearing concerning a final proposed action.  Section 809.4 specifies the rights of the parties upon completion of the hearing, including the right to a written decision of the trier of fact and an explanation of the procedure, if any, for appealing the decision.

recommendation is at issue shall have the initial burden of presenting evidence in support of such adverse recommendation or action. The Physician who requested the hearing shall thereafter have the *burden of proving* that the adverse action or recommendation *lacks any substantial factual basis*, or is otherwise arbitrary or capricious." (Italics added.)

It is plain from the wording of the first sentence of Bylaws section 13.8.7, which addresses DaVita's burden of presenting evidence, that it is consistent with the initial duty to present evidence specified in section 809.3, subdivision (b)(1). In contrast, the wording of the second sentence of Bylaws section 13.8.7 does not track the language in section 809.3, subdivision (b)(2).

Our analysis of whether the burden of proof in the Bylaws is consistent with the peer review statute begins with the meaning of the statutory term "preponderance of the evidence." (§ 809.3, subd. (b)(2).) An often-quoted definition of the term "preponderance of the evidence," states it "simply means what is says, viz., that the evidence on one side outweighs, preponderates over, is more than, the evidence on the other side, not necessarily in number of witnesses or quantity, but in its effect on those to whom it is addressed." (*People v. Miller* (1916) 171 Cal. 649, 652.) The Supreme Court also quoted a decision stating that, in a civil case, a preponderance of the evidence " 'meant such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability is in favor of the party upon whom the burden rests.' " (*Id*. at p. 653.) More recently, our Supreme Court stated the preponderance of the evidence standard "simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence.' " (*In re Angelia P.* (1981) 28 Cal.3d 908, 918; see CACI No. 200 [obligation to prove—more likely true than not true].) The preponderance of the evidence standard also has been described as the " 'weight of the evidence,' i.e., more than 50 percent proof." (*Union Pacific Railroad Co. v. State Bd. of Equalization* (1991) 231 Cal.App.3d 983, 1000.) We conclude

subdivision (b)(2) of section 809.3 used the term "preponderance of the evidence" in accordance with these definitions.

Next, we consider the meaning of the Bylaws' requirement that an applicant prove a recommendation to deny privileges "lacks any substantial factual basis." "Any" ordinarily means "of whatever kind" or "without restriction." (*Zabrucky v. McAdams* (2005) 129 Cal.App.4th 618, 628.) The term "substantial" appears in many legal contexts, including the substantial factor test for causation. That test refers to "a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm." (CACI No. 430.) When used to describe evidence, "substantial" means of ponderable legal significance, reasonable in nature, credible, and of solid value. (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 935–936; see *Sandarg v. Dental Bd. of California* (2010) 184 Cal.App.4th 1434, 1440 [evidence is substantial if any reasonable trier of fact could have considered it reasonable, credible and of solid value].)

The substantial evidence standard has been compared directly to the preponderance of the evidence standard by federal courts reviewing administrative proceedings in which social security disability benefits were denied. (E.g., *Holohan v. Massanari* (9th Cir. 2001) 246 F.3d 1195, 1201, 1211 ["Evidence can be 'substantial' if it is more than a scintilla, even though less than a preponderance"].) The same interpretation has been adopted in other contexts.

For example, in *Hynson, Westcott & Dunning, Inc. v. Richardson* (1972) 461 F.2d 215, the court recognized the term " 'substantial evidence' " in a federal statute was a milder term than " 'preponderant evidence' " or " 'conclusive evidence.' " (*Id*. at p. 220.) Similarly, in *Butler v. Oak Creek-Franklin School Dist.* (E.D.Wis. 2001) 172 F.Supp.2d 1102, the court concluded the "substantial evidence" standard of proof was lower than a preponderance of the evidence and, therefore was not acceptable in a student disciplinary hearing. (*Id*. at p. 1119.) The court stated the lower standard "would allow government

officials to make decisions that they themselves believe are more likely than not wrong." (*Ibid*.; see Note, *The Process That Is Due: Preponderance of the Evidence As the Standard of Proof for University Adjudications of Student-on-Student Sexual Assault Complaints* (2012) 53 B.C. L.Rev. 1613, 1633–1639 [comparing the substantial evidence standard to the preponderance of the evidence standard].)

Based on the foregoing comparisons of the substantial evidence standard to the preponderance of the evidence standard, we conclude a standard of proof requiring an applicant to prove the lack of any substantial factual basis for the Peer Review Committee's recommendation imposed a more demanding standard of proof than the preponderance of the evidence standard required by section 809.3, subdivision (b)(2). For instance, an applicant whose evidence constitutes 60 percent proof would satisfy the preponderance of the evidence standard, yet fail to prove the denial of privileges lacks *any* substantial factual basis because 40 percent proof would qualify as a substantial factual basis. Therefore, we conclude the Bylaws' burden of proof is not consistent with the statutory requirements and, as a result, is not enforceable. (§ 809.6, subd. (a).)[5]

B.      Standard Applied by the Hearing Officer

DaVita contends that, regardless of what the Bylaws say, the hearing officer applied the correct burden of proof. We disagree.

The hearing officer's 41-page written report contains many references to the burden of proof. For instance, it phrased the two substantive issues in terms of (1) the Peer Review Committee's initial burden of presenting evidence to support its recommendation and (2) Bichai's burden of proving the recommendation lacked any

---

[5]      We note that the "lacks substantial factual basis" appears in the staff bylaws of medical facilities located in other states. (See *Johnson v. Spohn* (5th Cir. 2009) 334 Fed.Appx. 673, 682–683 [Texas]; *Williams v. University Medical Center of Southern Nevada* (D.Nev. 2010) 688 F.Supp.2d 1111, 1132; *W.S.K. v. M.H.S.B.* (Ind.App. 2010) 922 N.E.2d 671, 684; *Volcjak v. Washington County Hospital Association* (1999) 124 Md.App. 481, 493.)

substantial factual basis or was otherwise arbitrary or capricious. The report quoted the Bylaws' burden of proof provision, section 13.8.7, in its entirety and cited that section at least three other times. For example, under a heading for findings and recommendations, the report stated:

> "Having reviewed the pretrial briefs of the parties and having considered the evidence both testimonial and documentary admitted into the Administrative Record at the hearing, and having considered arguments of counsel, I rule as follows:

> "**RULING**: I conclude that DaVita Credentialing and Peer Review Committee sustained its initial burden pursuant to Section 13.8.7 of the Medical Staff Bylaws to present evidence in support of its adverse recommendation to deny Dr. Bichai's Application for Appointment to the Medical Staff. I further find that Dr. Bichai has not sustained his burden of proving that the adverse action or recommendation denying his Application for Medical Staff privileges lacks any substantial factual basis, or is otherwise arbitrary or capricious."

These conclusions were restated near the end of the written report, along with a summary of the evidence:

> "Having concluded that the [Peer Review Committee] of DaVita has sustained its initial burden presenting evidence as referenced above, analysis then shifts to whether Dr. Bichai has sustained his burden of proving that the adverse action or recommendation denying his Application for Medical Staff Privileges (1) lacks any substantial basis, or (2) is otherwise arbitrary or capricious. I find that Dr. Bichai has failed to sustain that burden.

> "The extensive and timely documentation (see [Peer Review Committee] Exhibits 1-21) of multiple peer review issues both behavioral and clinical that have plagued Dr. Bichai from 2009 to 2014 constitute the requisite substantial basis in fact referenced in the burden of proof. While Dr. Bichai has impressive, educational background and training, including having attended a prestigious residency program at the UCLA/VA facility in Los Angeles and thereafter, a prestigious fellowship program in nephrology at Cedars Sinai, the evidence that Dr. Bichai proffered set forth in his Exhibits A-Y and as testified as to by him did not convince me that the detailed and documented history of peer review issues, both clinical and behavioral involving Dr. Bichai at the DaVita facilities, and at other

15.

hospitals in Bakersfield, lacked factual support or rational bases, or that the denial was arbitrary or capricious."

We conclude the foregoing quotes of the written report demonstrate that the burden of proof allocated to Bichai in Bylaws section 13.8.7 played an important role in the hearing officer's ultimate conclusion. Furthermore, the hearing officer's statement that "Bichai has not established that he is currently capable of meeting the qualifications set forth in Section 3.3(h), (i) and (j) of the Medical Staff Bylaws" does not, in our view, counteract the specific references to the burden of proof and does not demonstrate the hearing officer actually applied a preponderance of the evidence standard. Because the written report plainly states that the hearing officer applied the standard set forth in Bylaws section 13.8.7, we reject DaVita's contention that the hearing officer applied the correct burden of proof.

C.     Application of an Incorrect Burden of Proof was Prejudicial

Having concluded the hearing officer applied an incorrect legal standard in reaching a final decision, we next conduct an independent evaluation of whether the legal error was prejudicial. (*Natarajan*, *supra*, 11 Cal.5th at p. 1111.) The test for prejudice asks whether the violation resulted in unfairness, in some way depriving the physician of an opportunity for an impartial hearing. (See *El-Attar*, *supra*, 56 Cal.4th at p. 991.)

As background for our analysis of prejudice in this case, we note that where jury instructions place the burden of proof on the wrong party, the error usually is prejudicial. (*Zuckerman v. Underwriters at Lloyd's, London* (1954) 42 Cal.2d 460, 484; see *Buzgheia v. Leasco Sierra Grove* (1997) 60 Cal.App.4th 374, 393 [giving wrong party the burden of proof on dispositive issue was a major instructional error] (*Buzgheia*).) In an administrative proceeding where the agency placed the burden of proof on the wrong party, the court annulled the agency's decision and remanded to the agency for further proceedings. (*Coffin v. Alcoholic Beverage Control Appeals Bd.* (2006) 139 Cal.App.4th 471, 480–481.)

In comparison, where a jury instruction imposes the burden on the correct party but departs from the usual wording of the burden of proof, "minor errors are usually harmless, but major errors may not be." (*Buzgheia*, *supra*, 60 Cal.App.4th at p. 393.) Witkin states that while minor errors in an instruction describing the burden of proof are often harmless, "if the variance actually misstates the law and imposes a greater burden of proof, it may be reversible error." (7 Witkin, Cal. Procedure (5th ed. 2008) Trial, § 295, p. 348.)

In this case, the hearing officer imposed a greater burden of proof. (Cf. *Estate of Chambers* (2009) 175 Cal.App.4th 891, 897 [probate court imposed an incorrect, lesser standard of proof; probate order reversed with remand for application of correct standard of proof].) We conclude the more demanding burden of proof resulted in unfairness to Bichai. The PACE Program findings and the Quality Pulse Survey dated November 30, 2016, contain more recent information than the documentation of Bichai's past problems at DaVita facilities. The trier of fact could have regarded those more recent documents as constituting a preponderance of the evidence as to Bichai's current qualifications. Thus, there is a reasonable probability that application of the correct burden of proof would have produced a result more favorable to Bichai.

Consequently, we conclude the hearing officer's application of the wrong standard of proof was prejudicial error that rendered the proceeding unfair to Bichai. During oral argument, Bichai asserted that he qualified for appointment to the medical staff, DaVita was set against him and would never grant his application, and, as a result, this court should direct DaVita to grant him privileges. This request for relief is beyond our authority. Precedent of the California Supreme Court establishes that procedural error in the administrative hearing entitles Bichai to a new hearing. (*Natarajan*, *supra*, 11 Cal.5th 1095, 1112.) Consequently, we cannot direct the trial court to issue a writ of mandate requiring DaVita grant him staff membership and privileges.

III.    HEARSAY EVIDENCE[*]

Bichai also contends the superior court's judgment should be reversed because the hearing officer improperly admitted hearsay evidence and this error was prejudicial.  We briefly address this evidentiary issue because it might arise in the new hearing provided after issuance of the writ.

Bichai cites Government Code section 11513, subdivision (d) for the principle that hearsay evidence is inadmissible in an administrative proceeding unless it is introduced to corroborate nonhearsay evidence.  He also argues the hearsay evidence is not admissible under the standard set forth in the Bylaws.

Subdivision (d) of Government Code section 11513 states:  "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.  An objection is timely if made before submission of the case or on reconsideration."  Government Code section 11513 "applies to any agency as determined by the statutes relating to that agency." (Gov. Code, § 11501, subd. (a).)  " 'Agency' " refers to state boards, commissions and officers.  (Gov. Code, § 11500, subd. (a).)  The final decision in the peer review process was not made by an agency.  Consequently, we conclude the hearsay provision in Government Code section 11513 does not apply to the peer review hearing.

Bylaws section 13.8.2 states the hearing officer shall "make all rulings on matters of law, procedure, and the admissibility of evidence."  The admissibility of evidence is addressed in Bylaws section 13.8.6, which states:

> "The hearing is an administrative hearing and need not follow strict rules of evidence.  Any relevant evidence shall be admitted if, in the judgment of the Presiding Officer, it is the sort of evidence upon which responsible persons customarily rely in the conduct of serious affairs."

---

[*]    See footnote, *ante*, page 1.

18.

Pursuant to the Bylaws, the decision whether to admit the records from peer review proceedings at other health care facilities is committed to the judgment of the hearing officer. In the absence of any authority stating such records are categorically unreliable, the question of admissibility should be decided in the first instance by the hearing officer conducting the hearing on remand. Consequently, our directions for the issuance of a writ will not include a provision directing that the records relating to other peer review proceedings be excluded from evidence.

IV.    2014 DEEMED RESIGNATION[*]

Bichai contends the 2014 deemed resignation was invalid under section 809.6 and, therefore, he is still a member of DaVita's medical staff as a matter of law. Much of Bichai's briefing on the issues related to the deemed resignation asserts trial court error. However, our review is limited to the final peer review decision itself, "not the reasoning or actions of the superior court." (*Selma Hospital*, *supra*, 164 Cal.App.4th at p. 1499.)

The hearing officer's decision addressed the claimed invalidity of Bichai's deemed resignation and his related request for reinstatement. The decision described the documents leading up to the deemed resignation and then stated:

> "Based upon this documented history admitted into evidence by DaVita and based upon the relevant testimony of Dr. Robertson and Dr. Bichai, I conclude Dr. Bichai has not established a *prima facie* case, for reinstatement of his prior Medical Staff privileges and membership. Having been represented by counsel, and having entered into agreements providing that having requested, but chosen not to pursue, hearings to challenge these denials of reappointment, Dr. Bichai has waived his right to contend in this hearing that denial of reappointment was 'unlawful' or that he is entitled to reinstatement."

Accordingly, we consider whether the hearing officer erred in determining Bichai waived his right to challenge the deemed resignation. "Under California law, a waiver is the intentional relinquishment or abandonment of a known right or privilege. [Citation.]

---

[*]    See footnote, *ante,* page 1.

19.

Waiver is a question of fact [citation] and always is based upon intent [citation]." (*Selma Hospital*, *supra*, 164 Cal.App.4th at p. 1506.) The intent to waive may be expressed in words, either oral or written, or implied by a party's conduct. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31.) Because waiver presents a question of fact, we review the hearing officer's finding to determine whether it is supported by substantial evidence. (Code Civ. Proc., § 1094.5, subds. (c), (d) [substantial evidence standard for administrative findings]; see *Michalski*, *supra*, 221 Cal.App.4th at p. 1041 [substantial evidence standard applied to findings in peer review proceeding].)

Here, Bichai did not express in words an intent to waive his right to challenge the deemed resignation. Consequently, we consider whether such an intent was implied by his conduct.

Bichai did many things that are not consistent with challenging the deemed resignation. In June 2015, Bichai submitted a physician credentialing application to DaVita. Applying for privileges implies Bichai was not a member of the medical staff, which further implies the deemed resignation was valid and effective. In May 2016, after the Medical Board of California withdrew its amended accusation, Bichai submitted another physician credentialing application to DaVita. The second application also implied that the deemed resignation was effective. These implications were not contradicted by Bichai until December 2017, when he first claimed the deemed resignation was invalid. Thus, more than three and a half years elapsed from the time DaVita filed an 805 report describing the deemed resignation until Bichai first raised his challenge. Based on the passage of time and Bichai's pursuit of applications for medical staff membership and privileges, we conclude there is substantial evidence of conduct impliedly waiving the right to challenge the validity of the deemed resignation. Consequently, the hearing officer's finding of waiver will be upheld.

## DISPOSITION

The judgment is reversed.  The matter is remanded to the superior court with instructions to issue a writ of administrative mandamus directing DaVita to vacate the hearing officer's decision and grant Bichai a new administrative hearing.  Bichai shall recover his costs on appeal.

                                                  FRANSON, ACTING P. J.

WE CONCUR:


PEÑA, J.


SMITH, J.